UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DANIEL L. O'VADKA, et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|   v. | ) | CIVIL NO. 3:06cv698 |
| | ) | |
| CHRISTOPHER R. BLUM, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

<u>OPINION AND ORDER</u>

This matter is before the court on four pending motions.  First, the defendants,

Christopher R. Blum, Gregory N. Sweeny and John L. Delaney ("Federal Defendants" or

"United States"), filed a motion for summary judgment on the plaintiffs' first (fraud) and eighth

(intentional infliction of emotional distress) claims on December 20, 2006.  The plaintiffs,

Daniel L. O'Vadka and Tina M. O'Vadka, proceeding <u>pro se</u>, filed a response on January 29,

2007.  The Federal Defendants filed their reply on February 7, 2007

Second, the O'Vadkas filed a "Motion for Judicial Review of Substitution of the United

States as Lone Defendant to Plaintiff's First (Fraud) and Eighth (Intentional Infliction of

Emotional Distress) Claims for Relief" on January 29, 2007.  The United States filed its response

on February 7, 2007.  The O'Vadkas have not filed a reply.

Third, the Federal Defendants filed a motion to dismiss[1] under Rules 12(b)(1), 12(b)(2)

---

[1] This motion seeks dismissal of claims two through seven of the O'Vadka's Complaint.
These claims, as identified by the O'Vadkas are: deprivation of constitutional rights to due
process (5th Amendment); deprivations and conspiracy to deprive constitutional rights to
property (10th Amendment); conspiracy to deprive other constitutionally and federally protected
rights and privileges - 42 U.S.C. Section 1985; conspiracy and allowment of deprivations of
constitutionally and federally protected rights and privileges - 42 U.S.C. Section 1986;
declaratory and injunctive relief (includes claims of criminal conversion and criminal trespass;

and 12(b)(6) of the Federal Rules of Civil Procedure on February 1, 2007.   On February 7, 2007, in response to the motion to dismiss, the O'Vadkas filed a "Verified Motion to Strike Pleadings or to Stay the Proceeding Pending Discovery and Pending Another Directly Related Matter".  The Federal Defendants filed a response in opposition to the motion to strike on February 15, 2005.  The O'Vadkas have not filed a reply.

Fourth, on February 21, 2007, the O'Vadkas filed a "Verified Petition to Vacate Void Judgments of the Miami and Cass County Indiana Circuit Courts and Related Government Entities Actions in the Nature of Collateral Attack and Action to Quiet Titles Pursuant to the Interests of the People of the United States".  The Federal Defendants responded with a motion to strike, which was filed on February 27, 2007.  This was followed by a motion to strike the motion to strike, filed by the O'Vadkas on March 2, 2007.

<u>Discussion</u>

The O'Vadkas reside on property they own near the Peru Municipal Airport.  The Airport allegedly owned an easement on the O'Vadkas' property.  FAA employees (defendants herein) approached the O'Vadkas when it needed to either bulldoze some trees on the property or have the property lighted in order to extend the runway at the airport.

The O'Vadkas disputed the validity of the easement and alleged that the FAA had not complied with its own regulations. The O'Vadkas demanded meetings with various FAA officials and also demanded the production of documents.  Unsatisfied with the FAA's response, the O'Vadkas filed the present suit.

In a 146 page, 351 paragraph complaint the O'Vadkas assert that the defendants took

---

and declaratory and injunctive relief (various non-monetary relief).

their property unlawfully without due process and rendered their property unsafe and

uninhabitable without just compensation. The O'Vadkas claim that these alleged acts violated a

host of constitutional and statutory rights, as well as several state laws.  The O'Vadkas also

claim the torts of fraud and intentional infliction of emotional distress were committed. The

O'Vadkas request one million dollars against each defendant, plus punitive damages, as well as

various declaratory and injunctive relief including $175,000 to enable them to relocate.

The court will first address the O'Vadka's motion for judicial review of substitution of

the United States as lone defendant.

The individual defendants in this case are employees of the Federal Aviation

Administration.  Pursuant to authority delegated to him under regulation, United States Attorney

Joseph S. Van Bokkelen certified that the defendants were "acting within the scope of ...[their]

office or employment at the time of the incident out of which [Plaintiffs' First and Eighth]

claim[s] arose."  28 U.S.C. §2679(d)(1).  The United States then filed its notice substituting the

United States as the lone defendant to two of eight claims contained in the O'Vadka's complaint,

those claims being a claim for fraud and a claim for intentional infliction of emotional distress.

The O'Vadkas claim that Mr. Van Bokkelen's certification turns acts taken under the

color of law and official right into state tort claims and are an attempt to preclude Bivens actions.

The O'Vadkas also claim that the Federal Defendants' actions were taken in complete absence of

jurisdictional authority, under the color of law, and contrary to the federal statutes that provide

substantive and procedural rights.  Thus the O'Vadkas request judicial review of the substitution.

The O'Vadkas also request to amend their complaint to include a claim under § 1983.  However,

they have not filed a motion to amend and thus have not complied with Local Rules 7.1(b) and

15.1.

The United States acknowledges that "[a] plaintiff may request judicial review of the Attorney General's scope of employment determination, as [these plaintiffs] have done here." Osborn v. Haley, 2007 WL 135830, p.10 (2007).  However, the United States claims that Osborn supports certification and substitution.   In Osborn, the United States Supreme Court stated "Upon certification, the action is 'deemed to be . . . brought against the United States' . . . unless and until the district court determines that the federal officer originally named as defendant was acting outside the scope of his employment. . . " 2007 WL 135830 at 16.

The United States contends that the O'Vadkas' first (fraud) and eighth (intentional infliction of emotional distress) claims are not Bivens claims.  "A plaintiff bringing a claim under Bivens must allege that he has been deprived of a constitutional right by a federal agent acting under color of federal authority." Thomas v. Ashcroft, 470 F.3d 491 (2nd Cir. 2006). The United States argues that fraud and intentional infliction of emotional distress claims are not constitutional violations; instead, they are common-law torts. See, Nationwide Mutual Ins. Co. v. Neville, 434 N.E. 2d 585 (Ind. App. 1982) (defining tort of fraud); Lachenman v. Stice, 838 N.E. 2d 451 (Ind. App. 2006) (outlining elements of the tort of intentional infliction of emotional distress). Thus the United States concludes that should this Court find that the scope of employment certifications are proper, as to the O'Vadkas' claims for fraud and intentional infliction of emotional distress, Christopher R. Blum, Gregory N. Sweeny and John L. Delaney are immunized from suit for these claims by the Westfall Act[2], and the Federal Tort Claims Act

---

[2]  The Westfall Act accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the courts of their official duties.  Osborn v. Haley, 2007 WL 135830, p.1 (2007).

("FTCA") becomes the O'Vadkas' exclusive remedy.

Although the O'Vadkas spend considerable time discussing Bivens and various federal

statutes, they do not attempt to explain how their fraud and intentional infliction of emotional

distress claims could possibly support a Bivens action.  It is clear that fraud and intentional

infliction of emotional distress are torts and not constitutional violations.

The O'Vadkas nevertheless continue to argue that the scope of employment certifications

were not proper, asserting that the Federal Defendants' acts were ultra vires.  As the United

States points out "upon certification, the plaintiff bears the 'burden of showing that the

[defendants'] conduct was not within the scope of employment.'" Daniels v. Liberty Mutual

Insurance Co., 2006 WL 2644949, p. 4 (N.D. Ind. 2006).  "If a plaintiff refutes the scope of

employment certification by a preponderance of the evidence, then the burden of persuasion

shifts to the United States to show that the wrongful conduct occurred within the scope of

employment."  Wells v. United States, 2006 WL 2987948, p. 2 (E.D. Va. 2006).  "Scope of

employment for purposes of the FTCA is determined by reference to the respondeat superior law

of the state in which the alleged wrongful conduct occurred."  Id.  In the present case, the alleged

misconduct occurred in Indiana; therefore, Indiana's respondeat superior law provides the

framework for this court's certification review.

The principles governing Indiana's respondeat superior law were summarized in

Hurlow v. Managing Partners, Inc., 755 N.E. 2d 1158 (Ind. App. 2001):

> The doctrine of respondeat superior imposes liability on an employer for the
> wrongful acts of his employee committed within the scope of employment.
> Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc., 547 N.E.2d 244,
> 247 (Ind.1989). Our supreme court has recently reaffirmed that the critical inquiry
> focuses on whether the employee is in the service of his employer when  he
> commits the wrongful act. Warner Trucking, Inc. v. Carolina Cas. Ins. Co., 686

N.E.2d 102, 105 (Ind.1997). In other words, even if an employee 'violates the employer's rules, orders, or instructions, or engages in expressly forbidden actions,' the employer will still be held accountable as long as the employee was acting within the scope of employment. <u>Id</u>. However, an act does not fall within the scope of employment simply because the act could not have occurred without access to the employer's facilities. <u>Konkle v. Henson</u>, 672 N.E.2d 450, 457 (Ind.Ct.App.1996).

* * *

Thus, the employer may be vicariously liable if " '[the employee's] purpose, was to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself.' " <u>Warner Trucking</u>, 686 N.E.2d at 105 (alteration added) (quoting <u>Stropes</u>, 547 N.E.2d at 247).

* * *

In sum, an employer is liable under <u>respondeat superior</u>: 1) if an employee's act furthered the employer's business interest to an appreciable extent, or 2) if an employee's authorized acts and unauthorized acts are so closely associated that the employee can be said to have acted within the scope of his employment. <u>See</u>, <u>Warner Trucking</u>, 686 N.E.2d at 105.

<u>Hurlow</u>, <u>supra</u>, 755 N.E. 2d at 1161-1163.

As the United States points out, "[a] motion for substitution may be decided on the face of the complaint (akin to a motion to dismiss) when the movant contends that, even accepting the allegations as true, the defendant acted within the scope of his employment." <u>Godbout v. Parizek</u>, 2004 WL 442601, p. 3 (N.D. Ill. 2004). The United States asserts that, when for the purposes of this motion the allegations in the Complaint are accepted as being true, it is clear that the Federal Defendants were acting within the scope of their FAA employment. In their Complaint, the O'Vadkas have alleged that:

1. Christopher R. Blum, Gregory N. Sweeny and John L. Delaney ("Federal Defendants") are employees of the FAA. (Complaint, paragraphs 2, 4 and 5.)

2. The "FAA has full responsibility and authority to require compliance of federal airport design standards and federal statutes and regulations." (Complaint, Preliminary Statement, page 3.)

3. FAA employees Sweeny and Delaney along with "FAA Great Lakes Region

6

Airport District Office John Doe personnel oversee and approve airport development programs in this region." (Complaint, paragraph 75.)

4. Defendant Sweeney "confirmed that he was responsible for this Peru Indiana [Airport] project" and communicated (via phone, e-mail and letter) with the O'Vadkas' regarding their concerns about that project. (Complaint, paragraphs 94 to 97.)

5. In Plaintiffs' view, Defendant Sweeny's November 11, 2004 letter, which responded to Plaintiffs' questions about the Peru Airport, contained "fraudulent" statements. (Complaint, paragraphs 97 to 160.)

6. After getting Mr. Sweeny's response letter, the Plaintiffs continued to write letters to the "FAA demanding removal of the obstruction lights . . . disputing Mr. Sweeny's written statement . . . request[ing] the release of documents, administrative meeting and hearing and clarification of the regulatory effects and basis for FAA's determinations." (Complaint, paragraph 161.)

7. "In response to the Plaintiffs (sic) requests," Plaintiffs received a letter from Defendant Delaney ". . . [who] is Mr. Sweeny's immediate supervisor . . . ." (Complaint, paragraph 162.)

8. The Plaintiffs communicated with Defendant Delaney regarding the Peru Airport. (Complaint, paragraphs 162 to 168.)

9. Because Plaintiffs were not satisfied with responses from the FAA about the Peru Airport, they wrote Senator Bayh about their concerns. Plaintiffs were not satisfied with FAA's response to this congressional inquiry. (Complaint, paragraphs 168 to 179.)

10. On July 13, 2005, Plaintiffs met "FAA regional administrator Christopher Blum" and provided him with documents relating to their concerns about the Peru Airport. (Complaint, paragraph 183 to 180.)

11. The Plaintiffs continued to communicate with Defendant Blum (via phone, e-mail and letter) about their concerns regarding the Peru Airport. (Complaint, paragraphs 190 to 200.)

The United States argues the Complaint clearly demonstrates that the Federal Defendants were acting within the scope of their employment with the FAA when the alleged wrongful acts occurred. The United States asserts that the Federal Defendants' contacts with the O'Vadkas

related to matters under the jurisdiction of the FAA and clearly furthered the FAA's business interests.

The O'Vadkas do not contend that the Federal Defendants were not acting in their capacity as FAA employees when the alleged wrong acts occurred.  Rather, the O'Vadkas claim that the Federal Defendants' actions were taken "in complete absence of jurisdictional authority" and "contrary to federal statutes".   However, the question is not whether the Federal Defendants allegedly committed wrongful acts, but whether the Federal Defendants were furthering the business interests of the FAA when they committed the alleged wrongful acts.  Plaintiffs may not defeat immunity simply by claiming that the defendants committed acts "outside their authority" or "contrary to law", or else the immunity statute would be a nullity. Rather, the court looks at the substance of the allegations in the complaint.  It is clear that, accepting the allegations in the complaint as true for purposes of this motion, the Federal Defendants were acting within the scope of their employment when the alleged wrongful acts occurred.  Accordingly, this court finds that the substitution of the United States as the lone defendant was proper.

The court will now turn to the O'Vadkas' "Verified Petition to Vacate Void Judgments". In this petition the O'Vadkas request that state court judgments in Miami and Cass counties Indiana be voided, apparently for lack of jurisdiction.  The O'Vadkas also attempt to invoke supplemental jurisdiction pursuant to 28 U.S.C. § 1367.   The O'Vadkas then recite approximately 45 pages of facts and arguments pertaining to the state court actions and conclude with a request that this court "grant relief by Quiet Title to all Miami County lands acquired by the City of Peru Indiana and its Peru Municipal Board of Aviation Commissioners".

The Federal Defendants have filed a motion to strike the petition.  The Defendants first

note that none of the entities named in the O'Vadkas' prayer for relief are parties to this action.

Next the Defendants note that the O'Vadkas are, in essence, attempting to amend their federal

complaint.   As the Defendants have answered the federal complaint, the O'Vadkas are required

to file a motion for leave to amend before submitting an amended complaint.  Fed.R.Civ. P.

15(a).

The O'Vadkas have, in turn, moved to strike the motion to strike.   The O'Vadkas seem

to be under the mistaken impression that this court is under an obligation to decide whether the

state courts had jurisdiction over the cases before those courts.   However, such issues are clearly

not properly before this court.   If the O'Vadkas were a party to the state court proceedings, and

are unhappy with the results, they should appeal those cases to the Indiana Court of Appeals.  If

the O'Vadkas are attempting to add issues to their present federal lawsuit, they are required to

file a motion for leave to amend, as discussed above.  Accordingly, the O'Vadka's petition to

vacate and motion to strike the motion to strike will both be denied.

The court will now turn to the United States' motion for summary judgment on the

O'Vadkas' first and eight claims for relief.

<u>Summary Judgment Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his

opponent's claim.  <u>Fitzpatrick v. Catholic Bishop of Chicago</u>, 916 F.2d 1254, 1256 (7th Cir.

1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery,

against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." Id. In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist.  In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated.  See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994).  In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511.  Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion.  L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  Anderson, 477 U.S. at 248.  Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute.  Id.  The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e).  To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988).  The non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  Id.  A summary judgment

determination is essentially an inquiry as to "whether the evidence presents a sufficient disagree-ment to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-252.  Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate.  <u>Mason v. Continental Illinois Nat'l Bank</u>, 704 F.2d 361, 367 (7th Cir. 1983).

As noted above, the O'Vadkas seek monetary damages from certain FAA employees because these federal employees allegedly engaged in wrongful conduct best characterized as the torts of fraud (First Claim for Relief) and intentional infliction of emotional distress (Eighth Claim for Relief).  As also noted above, based upon 28 U.S.C. 2679(b)(1) and (d)(1), the United States was substituted as the lone defendant for these claims for relief.  It is undisputed that the O'Vadkas did not submit an administrative claim to the FAA before filing this suit which seeks to recover tort damages from the United States because of supposed wrongful actions (i.e fraud and the intentional infliction of emotional distress) of FAA employees.

The United States argues that it is entitled to judgment because the O'Vadkas did not present an administrative claim, which is a procedural prerequisite to an FTCA suit.

Section of 2675(a) of Title 28 provides that :

An action shall not be instituted upon a claim against the United States for money damages for the injury or loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government employment, ***unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in wring and sent by certified or registered mail*** . . .

(Emphasis added).

The Court of Appeals for the Seventh Circuit summarized this section's impact by stating: "[n]o

12

one may file suit under the Federal Tort Claims Act without first making an administrative claim"
Kanar v. United States, 118 F.3d 527 (7th Cir. 1997).  The United States has submitted sworn

testimony that the O'Vadkas have not filed a administrative claim with the FAA before they

commenced the instant action which seeks damages from the United States under the FTCA to

recover for injuries allegedly caused wrongful acts of certain FAA employees. The United States

contends that the O'Vadkas' failure to have complied with the FTCA's administrative claim

requirement is a failure to have exhausted their administrative remedies which mandates the entry

of grant of summary judgment. See, Miller v. United States, 2005 WL 2077321 (E.D. Wis. 2005).

The O'Vadkas, in response, do not assert that they have complied with the requirements of

the FTCA.  Rather, the O'Vadkas claim that they are not required to file under the FTCA to

obtain relief for their constitutional and statutory claims.  However, it is clear that the United

States is only seeking summary judgment on the O'Vadkas' first and eighth claims for relief,

which are tort claims and not constitutional or statutory claims.  Accordingly, as the record is clear

that the O'Vadkas have not complied with the requirements of the FTCA with respect to their first

and eighth claims for relief, the court will grant summary judgment in favor of the United States

on these two claims.

The court will next turn to the Federal Defendants' motion to dismiss. The Federal

Defendants have  provided the following factual summary which the O'Vadkas have not disputed,

and which is distilled from their Complaint.

Plaintiffs, Daniel and Tina O'Vadka, have resided at 3831 W. 100 N. Peru, Indiana since

1999. (Complaint, paragraphs 1 and 65 .) This residence is located near the Peru Municipal

Airport. (Complaint, paragraphs 49 and 65.) Although Plaintiffs state that the property is owned

jointly (Complaint, paragraph 65), a title report shows that the real estate is owned solely by Tina O'Vadka. (Exhibit 35 to Complaint.) Plaintiffs allege that they "had been approached by the airport and they had demanded to be allowed to bulldoze the trees on the property and then the property lighted when the plaintiffs would not allow this." (Complaint, paragraph 95.) The airport claims to have acquired, from a prior owner of the property, an easement on Plaintiffs' property. (Complaint, paragraphs 121 to 122.) For various reasons, the Plaintiffs dispute the validity of this easement.[3] Complaint, paragraphs 18, 73, 86, 123 to 126. Both Federal Aviation Administration ("FAA") and airport officials have not accepted Plaintiffs' claims regarding the invalidity of the easement. (Complaint, paragraph 125.)

The Federal Defendants are current FAA employees whose offices are located outside Indiana. (Complaint, paragraphs 2, 4 and 5.) Plaintiffs believe that "airport personnel" have not complied with FAA regulations. They believe that "it is the responsibility of the FAA to remedy this situation." In Plaintiffs' view, "[t]he Defendant (sic) has authority and responsibility to require compliance within all legal and contractual agreements with the local airport. When fraud and criminal activity is suspected, FAA must report this to the justice department . . . ." (Complaint, paragraph 97.) Plaintiffs assert that the Federal Defendants have failed to force the airport to comply with numerous federal statutes and/or FAA requirements including: (1) Uniform Relocation Assistance and Real Property Acquisition Act, 42 U.S.C. § 4601 et seq. (Complaint, paragraphs 12, 75, 76); and (2) various provisions of FAA grants (Complaint,

---

[3]  The O'Vadkas claim that no easement exists (Complaint, paragraphs 72 and 73) and that if such an easement was granted it is invalid because the alleged grantor of the easement did not own the property at the time the easement was supposedly granted and that, through the operation of state law, the easement has lapsed. (Complaint, paragraphs 121 to 125.)

paragraphs 195, 281 to 300.)

Plaintiffs' contact with Defendant Gregory Sweeny is primarily outlined in paragraphs 94 through 161 of the Complaint. Plaintiffs' contacts with Defendant Sweeny were threefold: (1) two telephone conversations, the first was between Plaintiff Dan O'Vadka and Defendant Sweeny on October 19, 2004, (Complaint, paragraph 94) and the second, on or about January 12, 2005, in which Dan O'Vadka and defendants Sweeny and John L. Delaney participated (Complaint, paragraph 165); (2) a single e-mail sent by Plaintiff Dan O'Vadka to Defendant Sweeny on November 1, 2004 (Complaint, paragraphs 96); and (3) two letters, an October 25, 2004 letter from Mr. O'Vadka to Mr. Sweeny (Complaint, paragraph 95), and a November 12, 2004 letter from Defendant Sweeny to the O'Vadkas responding to Plaintiffs' concerns and outlining the FAA's position on those concerns. (Complaint, paragraph 97.) The majority of the "Sweeny Paragraphs" (i.e. paragraphs 94 through 161 of the Complaint) are Plaintiffs' supposed repudiations of statements contained in Sweeny's November 12, 2004 letter.

Plaintiffs' contact with Defendant John L. Delaney is primarily outlined in paragraphs 162 through 167 of the Complaint. According to the Complaint, following the receipt of Defendant Sweeny's November 12, 2004 letter, Plaintiff Dan O'Vadka' "followed up with a series of letters to the FAA . . . [and] requested the release of documents, administrative meeting and hearing, and clarification of the regulatory effects and basis for FAA's determinations . . . [i]n response to the Plaintiffs' request, Defendant Jack Delaney of the Chicago Airports District office sent a letter 12-3-2004." (Complaint, paragraphs 161 to 162.) Plaintiff Dan O'Vadka had a telephone conversation with Defendants Sweeny and Delaney on or about January 12, 2005. (Complaint, paragraph 165.) The majority of the "Delaney Paragraphs" (i.e. paragraphs 162 through 167 of

15

the Complaint) are Plaintiffs' counter-arguments to statements in the Delaney letter and/or purportedly made during the January 12, 2005 telephone conversation.[4]

Plaintiffs' contact with Defendant Christopher R. Blum is outlined in paragraphs183 through 202 of the Complaint. By happenstance, Defendant Blum met the O'Vadkas "at the offices of INDOT" in Indianapolis on July 13, 2005. During this meeting, Plaintiffs showed documents to Defendant Blum, provided him with copies of certain documents, explained to him their version of events and their interpretation of "law" and fact. (Complaint, paragraphs 184 to 188.) "[O]n 7-13-2005, and also in subsequent conversation and in writings," Plaintiffs asked Defendant Blum "to arrange an administrative meeting . . . in which Mr. O'Vadka would show" the conduct he believed to be improper and illegal. (Complaint, paragraph 189.) "Mr. Blum did not grant any form of meeting or hearing with FAA, nor did he take any corrective action." Id. There were e-mail exchanges between the O'Vadkas and Blum (Complaint, paragraphs 192, 194 and 199; Exhibits 40 and 41 to Complaint), telephone conversations (Complaint, paragraph 193) and exchanges of correspondence (Complaint, paragraph 194). Plaintiffs were dissatisfied with Mr. Blum because, according to them: (a) he did not arrange the meeting the O'Vadkas had requested (Complaint, paragraph 189); (b) he did not take any corrective action (Complaint, paragraph 189); (c) he did not take corrective action or allow them to participate in his Legal

---

[4] In paragraphs 168 to 182 of the Complaint, Plaintiffs outline congressional contact with the FAA regarding their concerns. In Plaintiffs' view, the FAA's congressional response was evasive and fraudulent (i.e. contained statements they believe to be false). Former FAA employee Cecelia L. Hunziker, who has not been served with process, signed the FAA's response letter to Senator Bayh's first inquiry. (Complaint, paragraph 169.) Plaintiffs seek to sue Ms. Hunziker because they disagree with the contents of this response letter.

Department briefing (Complaint, paragraph 192); (d) "Mr. Blum evaded all issues of federal responsibility . . . [and] refused repeatedly to state a basis for making the claim that they [FAA] had no involvement or responsibility to require or enforce compliance with all statutory and regulatory requirements for airport development" (Complaint, paragraph 195); and (e) Defendant Blum's responses did not address their core concern but instead focused on the easement (Complaint, paragraph 200).

According to the Complaint, "plaintiffs claim that the defendants . . . authorized the use of public funding to deny the plaintiffs their Constitutional rights to property and due process provided by the Fifth Amendment of the Constitution of the United States." (Complaint, page 8, paragraph 6.) Plaintiffs claim that the Federal Defendants deprived them of both substantive and procedural due process rights (i.e. the right to a hearing[5], to notice and process). The supposed constitutional violations arise from "unknown and undisclosed effects and requirements [from the 1970 and 1989 airport developments] that prohibited residential development" of the real estate that they purchased in 1999 which is adjacent to the Peru Municipal Airport. Id.

The O'Vadkas also claim that their real property has been taken from them without compensation. They claim that the Federal Defendants "took no action to require [Peru Board of Aviation Commissioners ("BOAC")] lawful compliance [with federal statutes and regulation affecting Airport Improvement Programs ("AIP")] and instead allowed the airport to continue to

---

[5] The "hearing" rights alluded in the Complaint are Plaintiffs' desire to meet with FAA officials and present their views on, among other things, the results of their investigation, applicable state law, non-compliance with FAA regulations and the actions that they believe need to be taken. Complaint, paragraphs 189, (last sentence); 192 (last 2 sentences); 193 (last three sentences); and 199.

unlawfully affect properties surrounding the airport." [6]  Plaintiffs believe this inaction amounts to both a regulatory and physical taking of their real estate. (Complaint, paragraph 9.)

Also, Plaintiffs claim that the "defendants (sic) actions . . . in connection with the failure to require compliance with the airports (sic) statutory responsibility by contractual agreement . . . denied the plaintiffs rights provided by the Uniform Act [Uniform Relocation Assistance and Real Property Acquisition Act, 42 U.S.C. § 4601, et seq.] in violation of the Fifth Amendment right to due process." (Complaint, pages 12 to 13, paragraph 12.)  Plaintiffs "believe [that the Federal Defendants'] . . . exercise of this authority and actions to be in violation of the Tenth Amendment of the Constitution of the United States." (Complaint, paragraph 6.)

Plaintiffs also claim that the Federal Defendants violated Sections 1985 and 1986 of Title 42. "Specifically, Plaintiffs claim that FAA officials Sweeny, Delaney . . . and Blum . . . took unlawful actions and made false, fictitious and fraudulent statements and writings designed to falsify, conceal and cover up material facts necessary for the plaintiffs pursuit of redress of their grievances." (Complaint, paragraph 7.)

In support of their motion to dismiss, the Federal Defendants first argue that this court lacks subject matter jurisdiction over the O'Vadkas' condemnation claim because only the Court of Claims can hear condemnation claims.  Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of claims over which this court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon this court. In re Chicago, Rock Island & Pacific R.R. Co., 794 F.2d 1182, 1188 (7th Cir.1986). When a court's jurisdiction to entertain a case is

---

[6]  To the extent that Plaintiffs attempt to make claims for other land owners they can not do so. A pro se litigant can only represent their own interest.

placed in question by the filing of a 12(b)(1) motion, the court must resolve that issue before reaching the merits of the case. <u>Crawford v. United States</u>, 796 F.2d 924, 928 (7th Cir. 1986). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. <u>Kontos v. United States Dept. of Labor</u>, 826 F.2d 573, 576 (7th Cir.1987).

Because Plaintiffs are proceeding <u>pro se</u>, this Court should liberally construe their Complaint. When liberally construed,[7] this Court interprets the Complaint as asserting an inverse condemnation claim.[8] If Plaintiffs are asserting that their property was taken by the United States [9] for public use, only the Court of Claims, under 28 U.S.C. § § 1346(a)(2) and 1491(a)(1), has subject matter jurisdiction over such a claim.[10]

The Federal Defendants also assert that this court cannot exercise personal jurisdiction over them. The Federal Defendants are non-residents of Indiana; each of them is employed by the FAA at a duty station outside the state. (Declarations of John A. Delaney,

---

[7] The Federal Defendants assert that construing this case as an inverse condemnation action is unreasonable for several reasons. First, the plaintiffs indicate that they are suing the Federal Defendants in their individual capacity and secondly, only the sovereign, through official actions, can condemn property for the public good.

[8] "Inverse condemnation is the process provided by statute that allows individuals to be compensated for the loss of property interests taken for public purposes without use of the eminent domain process." <u>Cesare, LLC v. City of Bedford</u>, 2006 WL 3437619 (Ind. App. 2006)

[9] If plaintiffs claim that the "taking" was by a State entity, plaintiffs are provided a statutory inverse condemnation remedy under I.C. 32-24-1-16.

[10] In paragraph 347 of the Complaint, Plaintiffs ask for $175,000.00 for "relocation to another home." Accordingly, these Plaintiffs are claiming more than the $10,000.00 jurisdictional limit in 28 U.S.C. § 1346(a)(2).

Gregory N. Sweeny and Christopher R. Blum.) Sweeny's and Delaney's contacts with Indiana, as they relate to these Plaintiffs, consisted of interstate e-mail exchanges, letter exchanges and occasional telephone conversations as shown by their declarations. Defendants Sweeny and Delaney, with respect to these exchanges, were never physically in the state. Defendant Blum, in addition to having the same <u>de minimus</u> contacts with the Plaintiffs as Sweeny and Delaney, met with, listened to and received documents from Plaintiffs during a meeting in the Indianapolis office of INDOT ("Indiana Department of Transportation") on July 13, 2005.

All Plaintiffs' contacts with the Federal Defendants relate to their official duties with the FAA; it was through these contacts that Plaintiffs sought to convince the FAA that it was not taking appropriate action to ensure compliance with FAA regulations. These official capacity contacts, however, can not serve as a basis for personal jurisdiction. "[I]t is well-settled that this Court cannot assert jurisdiction over . . . individual defendant[s] based on . . . [their] actions taken pursuant to his employment." <u>Islamic American Relief Agency v. Unidentified FBI Agents</u>, 394 F. Supp. 2d 34, 58 (D.D.C. 2005). <u>See also,</u> <u>Thornton v. Quinlan</u>, 864 F. Supp. 90 (S.D. Ill. 1994) (Finding a federal official's "official capacity" correspondence was an insufficient basis for exercising personal jurisdiction in a <u>Bivens</u> suit).

Clearly, the Federal Defendants are correct, and the Federal Defendants cannot be sued in this court in their individual capacity, absent the requisite contact with the forum.

The Federal Defendants next maintain that the O'Vadkas' complaint fails to state claims for relief.  Rule 12(b)(6) permits a district court to dismiss complaints, or parts thereof, which fail to state actionable claims. In making these 12(b)(6) determinations, the complaints' factual allegations must be taken as true and in the light most favorable to the plaintiff. <u>Scheuer v.</u>

Rhodes, 416 U.S. 232 (1974); Rothner v. City of Chicago, 929 F.2d 297, 302 (7th Cir. 1991);

Marmon Group v. Rexnord, Inc., 822 F.2d 31 (7th Cir. 1987). If it is beyond doubt that the non-

moving party cannot prove any facts that can sustain their claim, the Court should grant a

12(b)(6) motion.[11] Thompson v. Ill. Dept. of Prof'l Regulations, 300 F.3d 750, 753 (7th Cir.

2002). In litigation where all parties are represented by counsel, the 12(b)(6) motion to dismiss

only tests the sufficiency of the complaint; however, where, as here, the plaintiff is proceeding

pro se, pleading standards are relaxed so that the Court should considers all of the materials filed,

not just the Complaint. Swofford v. Mandrell, 969 F.2d 547, 549 (7th Cir.1992).

        A review of the Complaint reveals that the O'Vadkas' accusations against the Federal

Defendants concern statements in letters written by certain of the Federal Defendants, which were

sent to the Plaintiffs and/or to Senator Bayh.[12] Plaintiffs liberally mention statements from these

letters in their Complaint; however, they did not include them among the exhibits to their

Complaint. As exhibits to the motion to dismiss, the Federal Defendants, through the declaration

of Laura E. Kilpatrick, have submitted these letters for consideration. For purposes of the Federal

---

[11]  Because this 12(b)(6) motion has been filed after an answer, it is technically a 12(c) motion. Rule 12(c) and 12(b)(6) motions are governed by the same standards.

[12]  In paragraphs 97 and 161 of the Complaint, Plaintiffs mention a response letter written by Defendant Sweeny on November 12, 2004 and they then expend numerous paragraphs providing their reasoning for challenging statements contained in that letter. (Complaint, paragraphs 97 to 100, 111, 116, 118, 119, 121, 140 to 143, 149 to 159). In paragraph 162 of their Complaint, Plaintiffs mention a December 3, 2004 letter signed by Defendant John L. Delaney and they then expend numerous paragraphs providing their reasoning for challenging statements contained in that letter. (Complaint, paragraphs 162 to 164). In paragraph 169 of the complaint, Plaintiffs mention a March 7, 2004 letter signed by former FAA official Cecelia Hunziker to Senator Bayh and they then expend numerous paragraphs providing their reasoning for challenging statements contained in that letter. (Complaint, paragraphs 169 to 178).

Defendants' 12(b)(6) motion, these documents are "part of the pleadings", because they were "referred to in plaintiff[s'] complaint and are central to . . . [their] claim[s]." McCready v. Ebay, Inc., 453 F.3d 882, 891 (7th Cir. 2006).

The Federal Defendants argue that no relief can be granted on the O'Vadkas' §§ 1985 and 1986 claims. As their fourth and fifth claims for relief, the O'Vadkas assert that they are entitled to relief because the Federal Defendants violated rights protected by sections 1985 and 1986 of Title 42.  If Plaintiffs' § 1985 claim is meritless, they can not recover under § 1986 because "[a] § 1986 claim must be predicated upon a valid § 1985 claim." Colon v. Sawyer, 2006 WL 721763, p. 6 (N.D.N.Y. 2006)(collecting cases); Forcades v. Feeney, 2004 WL 2603733 (E.D. Pa. 2004)("Without a § 1985 claim, there can be no claim under 42 U.S.C. § 1986."). "Despite its applicability to purely private conspiracies, § 1985(3) is limited in two interrelated ways. First, the Supreme Court has emphasized that § 1985(3) may not be construed as a 'general federal tort law' . . . Rather, a plaintiff must demonstrate 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" New York State National Organization for Women v. Terry, 886 F.2d 1339, 1358 (2nd Cir. 1989).

In the instant case, Plaintiffs' § 1985 claim fails because they do not allege any "racial or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." Id. The Federal Defendants argue that to the extent that any "class" can be culled from the allegations of Plaintiffs' Complaint that class consists of persons who own real property either adjacent to and/or located near the Peru Municipal Airport. (Complaint, paragraph 20.)   The Federal Defendants report that they are unable to find any case finding "property ownership" to be an appropriate class for § 1985(3) purposes. Additionally, Plaintiffs do not allege that the

purported conspirators' (i.e the Federal Defendants, "Personnel of the Indiana Department of

Transportation and . . . Peru Indiana Municipal Board of Aviation Commissioners, Peru City's

Attorney and other municipal employees and officials") actions were motived by any "invidiously

discriminatory animus"; rather, according to Plaintiffs, the alleged conspirators were motivated to

act "to conceal and cover-up past unlawful compliance and misuse of taxpayer funding," "to

shield from redress the failure of the airport to take appropriate and lawful actions to establish

jurisdictional authority over lands . . ." and "to shield themselves from redress when Mr. O'Vadka

uncovered past failures to lawfully administrate these programs and developments within the

rights of all persons affected by past fraud permitted and financed by state and federal

administrative personnel." (Complaint, paragraphs 331 and 332.)

This court agrees with the Federal Defendants' assessment of the viability of the

O'Vadkas' section 1985 and Section 1986 claims.  The O'Vadkas have not asserted that they are

a member of any protected class, and the facts in this case do not support such an assertion.  Thus,

these claims will be dismissed.

The Federal Defendants next argue that no relief can be granted on the O'Vadkas' alleged

Bivens claims.  "A plaintiff bringing a claim under Bivens must allege that he has been deprived

of a constitutional right by a federal agent acting under color of federal authority." Thomas v.

Ashcroft, 470 F.3d 491 (2nd Cir. 2006).  The Federal Defendants argue that violations of federal

statutes and regulations cannot be basis for a Bivens claim.  Throughout the Complaint, Plaintiffs

alleged that the Federal Defendants failed to properly interpret and enforce grant provisions, FAA

regulations and Federal statutes. As an example, in paragraph 56 of the Complaint, plaintiffs

allege that "the residents were not afforded" the federal statutory right "to petition the Secretary

23

of the Department of Transportation in opposition to airport development. . . . ." In paragraph 75 of their Complaint, Plaintiffs allege that the "[e]stablished procedures . . . by the Uniform Act and 49 CFR part 24 for the acquisition of property for federally assisted programs . . . were not followed."   The Federal Defendants correctly maintain that none of the supposed regulatory or statutory errors alleged in the Complaint can serve as the basis for any relief under a <u>Bivens</u> analysis. <u>See</u>, <u>Baranski v. Fifteen Unknown Agents of ATF</u>, 252 F. Supp. 2d 401, 404 (W.D. Ky. 2003) ("<u>Bivens</u> does not provide a basis for claims against federal officials for violating a federal statute.")

The Federal Defendants further argue that the O'Vadkas' alleged <u>Bivens</u> claims are barred by the applicable statute of limitations.    The Federal Defendants claim that many of the events upon which Plaintiffs rely occurred before October 6, 2004 (two years before Plaintiffs filed their Complaint) and that Plaintiffs, themselves, were aware of a possible statute of limitations problem, as they included in the Complaint argument about claims of discovery, equitable tolling, and the continuing violation doctrine. (Complaint, paragraph 10.)

"In <u>Bivens</u> actions, as in suits under § 1983, the period of limitations comes from state law." <u>Lewellen v. Morley</u>, 875 F.2d 118 (7th Cir. 1989). "Courts look to the statute of limitations for personal injury in the state where the injury occurred . . . While the state tolling rules are used, . . . the accrual of claims is governed by federal law . . . [ <u>Bivens</u>] claims accrues . . . when the plaintiff knows or should know that his or her constitutional rights have been violated." <u>Savory v. Lyons</u>, 469 F. 3d. 667, 672 (7th Cir. 2006). Indiana's statute of limitations for personal injury claims is two years. I.C. 34-11-2-4. While statute of limitations is an affirmative defense, a plaintiff can plead himself out of court if the allegations of the complaint show that the claim is

time-barred. <u>See, e.g.</u>, <u>Arensman v. Meloy</u>, 2006 WL 3775983 (N.D Ind. 2006). In making this statute of limitations analysis, "[f]irst, a court must identify the injury. Next, it must determine the date on which the plaintiff could have sued for that injury." <u>Hileman v. Maze</u>, 367 F. 3d 694, 696 (7th Cir. 2004).

Plaintiffs' alleged Fifth Amendment claim includes the following: (1) "Plaintiffs were not and have not been afforded hearing, disclosure or process . . . Defendants repeatedly stated historical lawful compliance as basis for their actions, authorizations and determinations"; (2) "the property now owned by plaintiffs was affected by a federally required airport safety area from the time of original airport development in 1970 . . . The plaintiffs purchased property in 1999 that was and had been affected by many unknown and undisclosed effects and requirements that prohibited residential development. . . . ." (Complaint, paragraph 8.) Plaintiffs seem to be asserting that Defendants' actions have amounted to taking of the real estate that they purchased in 1999.

According to the Plaintiffs, their property has been affected by the "federally required airport safety area from the time of original airport development in ... 1970." Clearly to the extent that this activity can be construed as a deprivation of property, it occurred in the 1970's, some 30 plus years before the Plaintiffs acquired the property. Plaintiffs seem to allege that their <u>Bivens</u> claims, premised on this alleged constitutional taking, have remained viable due to the continuing violation doctrine because defendants' failure to enforce applicable regulations and statutes, as they interpret them, subjects them to continuing violations. However, as the Federal Defendants point out, the continued assertion of a position does not constitute a fresh act which continues a violation. <u>Savory v. Lyons</u>, 469 F. 3d. 667 (7th Cir. 2006). <u>See also</u>, <u>Pace v. United States</u>, 2003

WL 21303262 (N.D. Fla. 2003)(Finding that the continued deprivation of property wrongfully taken does not constitute a continuing violation that would toll the statute of limitations.)

Additionally, as the Federal Defendants further point out, Plaintiffs' case is not saved from untimeliness by equitable tolling. Equitable tolling "permits plaintiff to sue after statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." Donald v. Cook County Sheriff's Dept., 95 F.3d 548, 561 (7th Cir. 1996).  "Such may be the case if the plaintiff is unable to determine who caused his injury, has received inadequate notice or if the appointment of counsel is pending. Savory, supra, 469 F. 3d at 673. It is clear from the Complaint that Plaintiffs were aware of the fact that their real property would be affected by the operation of the Peru Municipal Airport even before they purchased it in 1999.  (Complaint, paragraphs 65 and 66.)  Accordingly, dismissal is appropriate.

The Federal Defendants further argue that, in any event, they did not deprive the O'Vadkas of their constitutional rights.  The O'Vadkas claim a violation of the Tenth Amendment.  The Tenth Amendment provides the following: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Plaintiffs' Complaint does not contain a specific claim for relief for this supposed violation. Even if they had made such a claim, this Court could not grant relief based upon same because the Bivens remedy has not been extended to supposed violations of this amendment. See, Holly v. Scott, 434 F.3d 287 (4th Cir.2006) (Recounting history of extending Bivens to violations of the Fifth and Eighth Amendments and Supreme Court's caution and reluctance to extend this remedy into new areas).

26

The O'Vadkas second and third claims for relief attempt to state claims based on the Fifth Amendment.  Specifically, the O'Vadkas assert <u>Bivens</u> violations under both the takings and due process (both procedural and substantive) components of the Fifth Amendment.  According to the Plaintiffs, "[t]he aforesaid improper, fraudulent, forceful and injurious actions of the defendants deprived the plaintiffs of just compensation for property taken for public use guaranteed by the Fifth Amendment to the United States Constitution." (Complaint, paragraph 330.) Plaintiffs "summarize" their Due Process <u>Bivens</u> theory in Paragraph 327 of the Complaint.

"The substantive component of the due process clause 'bar[s] certain government actions regardless of the fairness of the procedures used to implement them.'" <u>Ackermann v. Powers</u>, 2005 WL 147551, p.1 (W.D.Wis. 2005), quoting, <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986). "[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.' ... [C]onduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." <u>County of Sacramento v. Lewis</u>,  523 U.S. 833, 846-49 (1998).

The Federal Defendants argue that the fact that the Plaintiffs disagree with their interpretation of the FAA's statutes and regulations cannot give rise to a <u>Bivens</u> action against the individuals personally. According to the Federal Defendants, even if this court assumes that Plaintiffs' analysis is correct and the Federal Defendants' supposed failure to agree with the O'Vadkas was erroneous, Plaintiffs' substantive due process claim fails because the alleged conduct must be "arbitrary," "conscience-shocking," or "oppressive in the constitutional sense," not merely "incorrect or ill-advised." <u>Lowrance v. C.O. S. Achtyl</u>, 20 F.3d 529, 537 (2d Cir.1994)

(internal quotation marks and citation omitted).

"When a plaintiff brings an action for procedural due process violations, he must show at the outset that he was deprived of a constitutionally protected interest in 'life, liberty, or property' without due process of law. . . Only after a plaintiff has stated such a deprivation will the Court conduct an analysis of whether the process he received was adequate. <u>Custard v. United States</u>, 2006 WL 1599210 (S.D. Ill. 2006), quoting <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990). In the present case, Plaintiffs' procedural due process claim arises from "their" ownership of real estate. However, as established by Plaintiffs' own exhibits, this property is not jointly owned; it is only owned by Tina O'Vadka. (Exhibit 35 to the Complaint.) Accordingly, Plaintiff Dan O'Vadka lacks the prerequisite property interest which is foundational to a procedural due process claim. Even though  Tina O'Vadka possesses a property interest, the Federal Defendants are correct that this court can not grant her any relief on her procedural Due Process claim. "In determining whether procedural due process requirements have been met, the court weighs several factors, including (1) 'the private interest that will be affected by the official action;' (2) 'the risk of an erroneous deprivation of such interest through the procedures used;' (3) 'the probable value, if any, of additional or substitute procedural safeguards;' and (4) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" <u>Pavelich v. Natural Gas Pipeline Company of America</u>, 2002 WL 31804410 (N.D. Ill. 2002), quoting, <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976).

A review of the Complaint shows that the process that Tina O'Vadka desires is unrelated to any deprivation of property, but instead relates to her desire to meet with FAA officials in an

attempt to convince them that her legal interpretations are correct and should be adopted by that agency's personnel. (Complaint, paragraphs 163, 168, 189, 192, and 193.) Although Tina O'Vadka did not physically meet all the FAA officials she would have liked to have met with, she was afforded the opportunity to express her positions to FAA officials and have them considered; in other words, she was afforded all the process to which she was due.

The Federal Defendants next argue that the O'Vadkas' third claim for relief (taking claim) lacks merit.  In Himelstein v. City of Fort Wayne, 898 F. 2d 573, 576 (7th Cir. 1990), the Seventh Circuit upheld the dismissal of a § 1983 suit, alleging a takings violation, finding that the plaintiff "must bring an inverse condemnation suit in the Indiana courts before a takings claim will be ripe for prosecution in the federal arena." Because Tina O'Vadka has the right to sue the United States under the Tucker Act to obtain compensation for any alleged taking, she does not have "an implied cause of action under Bivens for a Fifth Amendment takings claim." Anoushiravani v. Fishel, 2004 WL 1630240, pages 8-9 (D. Or. 2004).

Next, the Federal Defendants assert that they are entitled to qualified immunity. The scope and analysis for qualified immunity has been stated thusly:

> The doctrine of qualified immunity shields government officials against suits arising out of their exercise of discretionary functions 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " Jones, 425 F.3d at 460 (quoting Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The Supreme Court in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), summarized the two-part test for qualified immunity. "First, a court must decide whether the facts, when viewed in the light most favorable to the plaintiff, indicate that the officer's conduct violated some constitutional right of the plaintiff." Jones, 425 F.3d at 460 (citing Saucier, 533 U.S. at 201, 121 S.Ct. 2151). If so, the "court must determine whether the constitutional right violated was 'clearly established' at the time of the alleged violation." Jones, 425 F.3d at 460 (quoting Saucier, 533 U.S. at 201, 121 S.Ct. 2151). "Unless the answer to both questions is 'yes,' "a government official is entitled to qualified immunity. Jones, 425 F.3d at 460.

McKinney v. Duplain, 463 F.3d 679, pp. 683 - 684 (7th Cir. 2006).

Even if the O'Vadkas have stated a viable Bivens claim under the 10th Amendment, the Federal Defendants assert that they are shielded by qualified immunity. As the Federal Defendants point out, such a right under the Tenth Amendment can not be said to have been "clearly established" as this would be the first case to extend the Bivens remedy to such a claim. See, e.g., Alexander v. City of Milwaukee, 2007 WL 117491, p. 7 (7th Cir. 2007)(Court must "determine whether the state of the law with respect to affirmative action during the relevant period would have put a reasonable official on notice that the approach taken by the . . . [Federal Defendants] was unconstitutional.")

Lastly, the Federal Defendants argue that no injunctive relief can be granted to the O'Vadkas.  In the Sixth and Seventh claims for relief, Plaintiffs ask this Court for non-monetary relief, which they describe as being injunctive and declaratory.  The Federal Defendants maintain that this court can not grant relief on the O'Vadkas' non-monetary claims.

In their Sixth claim for relief, Plaintiffs ask this Court for non-monetary relief because Federal Defendants allegedly violated two (2) sections of Indiana's Bill of Rights and two (2) state criminal (misdemeanor) statutes, criminal trespass and conversion. (Complaint, paragraphs 341 to 344.)   However, as the Federal Defendants note, the Plaintiffs' request for non-monetary relief is both jurisdictionally and substantively flawed. These supposed violations, even if true, would not present federal questions and/or civil rights matters for subject matter jurisdiction purposes under Sections 1331 and 1343 of Title 28, the two jurisdictional statutes specifically cited by plaintiffs. (Complaint, paragraph 20.) Additionally, Plaintiffs' request that

this Court exercise "pendant jurisdiction"(i.e. supplemental jurisdiction under 28 U.S.C. §1367) over their state law claims fails, on a substantive basis, because state law does not provide a private right of action for allegedly violating any of the state law provisions cited.

In connection with the Seventh claim for relief, Plaintiffs ask the Court to: (a) hold an evidentiary hearing "to determine the claimed jurisdictional authority"; (b) immediately enjoin "the further use or disbursement of taxpayer funds until such authority is proven or is established within the rights and safety of all persons affected; and (c) temporarily enjoin " the operation of the airport or the deposit of $175,000.00 with the court for [Plaintiffs] use in moving and relocation to another home . . . ." (Complaint, paragraph 347.) Plaintiffs ask for this relief because, in their view, the Federal Defendants "refuse to show proof of the jurisdictional authority of the Peru municipal airport" and, despite a "[f]ederal statute prohibit[ing] the use of funds without said authority being established" "[d]efendants continue to provide further federal funds for the use of and development of the airport" even though they have wrongly "determined that all state and federal laws have been adhered to, and the use of funds to be in compliance with all state and federal laws." (Complaint, paragraph 347.)

Injunctive relief is appropriate in a Bivens case. Hill v. Thalacker, 2005 WL 602353 (W.D. Wis. 2005). However, as noted earlier, the O'Vadkas are not asserting a Bivens claim but instead are seeking relief for a supposed violation of a Federal statute. Plaintiffs have not shown that the unspecified Federal statute grants a private right of action as a remedy. Additionally, the alleged actions that the Plaintiffs seek to enjoin do not restrict the personal actions of the Federal Defendants, but instead relate to the official actions of the FAA.  Injunctive relief is clearly not

31

appropriate in this case.

Rather than responding to the motion to dismiss, the O'Vadkas filed a motion to strike. The O'Vadkas ask the court to take judicial notice that "no discovery has been allowed" and argue that without discovery they believe they "are being denied due process and are put in a defenseless position...".  The O'Vadkas then repeat several allegations from their complaint. They also ask the court to take judicial notice "of the fact that this situation began in 2004" and state that  "we are enduring continuing demands that we submit to further forcible and illegal takings."

Clearly, however, this case has serious (and fatal)subject matter and personal jurisdiction issues.   Additionally, the O'Vadkas have failed to state a claim with respect to their numerous claims.  Furthermore, even if the O'Vadkas could state a claim for relief, the Federal Defendants are entitled to immunity.  Accordingly, dismissal is appropriate.

Conclusion

On the basis of the foregoing, the United States motion for summary judgment on the O'Vadkas' first and eighth claims for relief is hereby GRANTED.  Further, the O'Vadkas' motion for judicial review of substitution of the United States as defendant is hereby DENIED.

The Federal Defendants' motion to dismiss claims two through seven is hereby GRANTED, and the O'Vadkas' motion to strike the motion to dismiss is hereby DENIED.

Additionally, the O'Vadkas' petition to vacate void judgments is hereby DENIED, the Federal Defendants' motion to strike the petition is hereby GRANTED, and the O'Vadkas'

motion to strike the motion to strike is hereby DENIED.


 Entered: May 24, 2007.


                                        s/ William C.  Lee
                                        William C. Lee, Judge
                                        United States District Court